*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*THE SPRINGFIELD TERMINAL* )
*RAILWAY COMPANY,*   )
          )
    *Plaintiff*   )
          )
*v.*          )   *Civil No. 07-52-P-S*
          )
*FORE RIVER WAREHOUSING* )
*AND STORAGE CO., INC.,*  )
          )
    *Defendant*  )

*RECOMMENDED DECISION ON DEFENDANT'S*
*MOTION TO STAY CASE*

Defendant Fore River Warehousing and Storage Co., Inc. ("Fore River") moves pursuant to 49 U.S.C. § 10501 and the doctrine of primary jurisdiction for a stay of the instant demurrage-charge collection action and referral to the Surface Transportation Board ("STB") of questions that Fore River contends are peculiarly within the STB's ken. *See generally* Motion of Defendant Fore River Warehousing and Storage Co., Inc., To Stay Case and Refer Questions to the Surface Transportation Board ("Motion To Stay") (Docket No. 6).[1] For the reasons that follow, I recommend that the motion be granted.

### I.  Applicable Legal Standards

The doctrine of primary jurisdiction "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the

---

[1] "Demurrage is a charge exacted by a carrier from a shipper or consignee on account of a failure on the latter's part to load or unload cars within the specified time prescribed by the applicable tariffs; the purpose of the charge is to expedite the loading and unloading of cars, thus facilitating the flow of commerce, which is in the public interest." *Illinois Cent. R.R. Co. v. South Tec Dev. Warehouse,* (*continued on next page*)

scheme." *United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 353 (1963). "Court jurisdiction is

not thereby ousted, but only postponed." *Id*.; *see also, e.g., Puerto Rico Mar. Shipping Auth. v.*

*Federal Mar. Comm'n,* 75 F.3d 63, 67 (1st Cir. 1996) ("The doctrine of primary jurisdiction does

not implicate the subject matter jurisdiction of the federal court.").

> In a nutshell, the primary jurisdiction doctrine permits and occasionally requires a
> court to stay its hand while allowing an agency to address issues within its ken.
> Although sometimes treated as a mechanical and rigid requirement, the modern view is
> more flexible, and the decision usually depends on whether a reference will advance
> the sound disposition of the court case and whether failure to refer will impair the
> statutory scheme or undermine the agency to which the reference might be made.

*United States Pub. Interest Research Group v. Atlantic Salmon of Me., LLC*, 339 F.3d 23, 34 (1st

Cir. 2003) (citations omitted). "When an agency has primary jurisdiction, the court has discretion

either to stay the case pending an STB determination or, if the parties would not be unfairly

disadvantaged, to dismiss the case without prejudice." *Rymes Heating Oils, Inc. v. Springfield*

*Terminal Ry. Co.*, 358 F.3d 82, 91 n.9 (1st Cir. 2004). "Dismissal of the complaint may be

appropriate when all of the relief that is sought in court can be obtained in an administrative forum."

*Id*. (citation and internal quotation marks omitted). In this case, Fore River specifically seeks a stay.

*See* Motion To Stay at 1.

The STB and this court have concurrent jurisdiction over the instant suit, brought by The

Springfield Terminal Railway Company ("STRC"), an interstate railway carrier subject to the

jurisdiction of the STB, *see* Complaint (Docket No. 1) ¶ 2, to recover demurrage charges from Fore

River pursuant to 49 U.S.C. § 10746[2] and two STRC freight tariffs, *see id*. ¶¶ 4, 8, 28; *see also, e.g.*,

---

*Inc.*, 337 F.3d 813, 815 n.1 (7th Cir. 2003) (citation and internal quotation marks omitted).

[2] Section 10746 provides: "A rail carrier providing transportation subject to the jurisdiction of the [STB] under this part shall compute demurrage charges, and establish rules related to those charges, in a way that fulfills the national needs related to . . . **(1)** freight car use (*continued on next page*)

2

49 U.S.C. §§ 10501(b)(1), 11705(a);[3] *Capitol Materials Inc. – Petition for Declaratory Order – Certain Rates & Practices of Norfolk S. Ry. Co.*, STB Docket No. 42068, 2004 WL 771676, at *1-*2 (Surface Transp. Bd. Apr. 9, 2004) ("Demurrage charges are subject to [STB] regulation under 49 U.S.C. 10702, which requires railroads to establish reasonable rates and transportation-related rules and practices. In addition, pursuant to 49 U.S.C. 10746, rail carriers must compute demurrage charges, and establish rules related to those charges, in a way that will facilitate freight car use and distribution and promote an adequate car supply. . . . Under 5 U.S.C. 554(e) and 49 U.S.C. 721, the [STB] may issue a declaratory order to terminate a controversy or remove uncertainty.").

The First Circuit has stated that it "relies on three factors to guide the decision on whether to refer an issue to an agency under the primary jurisdiction doctrine":

> (1) whether the agency determination lies at the heart of the task assigned the agency by Congress; (2) whether agency expertise is required to unravel intricate, technical facts;

---

and distribution; and **(2)** maintenance of an adequate supply of freight cars to be available for transportation of property." 49 U.S.C. § 10746.

[3] Fore River invokes section 10501, the STB's "general jurisdiction" statute, as a basis for the STB's jurisdiction. *See* Motion To Stay at 1; *Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.*, 215 F.3d 195, 199 (1st Cir. 2000) (citation and internal quotation marks omitted). The First Circuit has observed that despite language in section 10501(b) that "appears to grant the STB exclusive jurisdiction over any claim involving 'transportation by rail carriers' – an extremely broad category . . .[,] other sections of the ICCTA [Interstate Commerce Commission Termination Act of 1995] permit the filing of certain types of suits in federal district court." *Pejepscot*, 215 F.3d at 199 (citations omitted). Among those other sections is 49 U.S.C. § 11705(a), pursuant to which "[a] rail carrier providing transportation or service subject to the jurisdiction of the [STB] under this part must begin a civil action to recover charges for transportation or service provided by the carrier within 3 years after the claim accrues." 49 U.S.C. § 11705(a); *see also Pejepscot*, 215 F.3d at 199 (identifying section 11705(a) as among carveouts to "exclusive" STB jurisdiction). At least one court sensibly has construed section 11705(a) to encompass civil actions by rail carriers to collect demurrage charges. *See Union Pac. R.R. Co. v. Coast Packing Co.*, 236 F.Supp.2d 1130, 1133 (C.D. Cal. 2002) ("As Plaintiff concedes in its opposition, claims [for demurrage charges] based on § 10746 are subject to the three-year statute of limitations in § 11705(a)."). This comports with the consistent holding of the United States Supreme Court "that federal district courts have jurisdiction over actions brought by common carriers to recover monies owed under published and filed tariffs." *Canadian Nat'l Ry. v. Unistar Plastics LLC*, Civil Action No. 06-2763, 2006 WL 2460754, at *3 (E.D. La. Aug. 22, 2006) (footnote omitted). While the ICCTA abolished the requirement, codified at former 49 U.S.C. § 10762, that rail carriers file tariffs, carriers continue to be required, *inter alia*, to establish reasonable rates, rules and practices for transportation and service they may provide, *see* 49 U.S.C. § 10702; *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 688-89 (D.C. Cir. 1996), and to "provide to any person, on request, the carrier's rates and other service terms[,]" 49 U.S.C. § 11101(b). In addition, as noted above, demurrage charges are expressly regulated pursuant to 49 U.S.C. § 10746.

and (3) whether, though perhaps not determinative, the agency determination would materially aid the court.

*Pejepscot*, 215 F.3d at 205 (citation and internal punctuation omitted).  These factors, however, "must be balanced against the potential for delay inherent in the decision to refer an issue to an administrative agency[.]"  *American Auto. Mfrs. Ass'n v. Massachusetts Dep't of Envtl. Prot*., 163 F.3d 74, 81 (1st Cir. 1998).

Application of the doctrine of primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling."  *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (footnote omitted).  Despite loose use of the term "referral," the court typically merely stays action to permit the parties to seek a ruling before the applicable agency; most statutes contain "no mechanism whereby a court can on its own authority demand or request a determination from the agency; that is left to the adversary system[.]"  *Id*. at 268 n.3.[4]  In cases involving referrals to the STB, "the court retains exclusive jurisdiction to enforce or set aside in whole or part any order of the STB arising out of the referral."  *Union Pac. R.R. Co. v. FMC Corp*., No. CIV.A. 99-CV-200, 2000 WL 134010, at *2 n.5 (E.D. Pa. Feb. 3, 2000); *see also, e.g*., 28 U.S.C. § 1336(b) ("When a district court or the United States Court of Federal Claims refers a question or issue to the Surface Transportation Board for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Surface Transportation Board arising out of such referral.").

---

[4] The STB has noted that "petitions for issuance of a declaratory order premised on referral from a federal court are routinely accepted and treated procedurally in the same manner as a complaint."  *South-Tec Dev*. *Warehouse, Inc. & R.R. Donnelley & Sons Co. – Petition for Declaratory Order – Ill. Cent. R.R. Co*., STB Docket No. 42050, 2000 WL 210698, at *1 (Surface Transp. Bd. Feb. 14, 2000) (footnote omitted).

"When the [Interstate Commerce] Commission resolves a question within its primary jurisdiction, its resolution should not be set aside unless it exceeds the Commission's statutory authority or is unsupported by substantial evidence." *Locust Cartage Co. v. Transamerican Freight Lines, Inc.,* 430 F.2d 334, 341 (1st Cir. 1970).[5]

## II.  Factual Context

STRC is a Vermont corporation with its principal place of business at 1700 Iron Horse Park, North Billerica, Massachusetts.  Complaint ¶ 2.[6]  STRC is an interstate rail carrier subject to the jurisdiction of the STB.  *Id.*  Fore River is a Maine corporation with its principal place of business at 217 Read Street, Portland, Maine.  *Id.* ¶ 3.  It owns and operates a warehousing facility that is served by rail and located in Portland, Maine.  *Id.*; *see also* Declaration of Michael Cella ("Cella Decl."), Exh. A to Motion To Stay, ¶ 2.  By various modes of transportation, including rail, Fore River's customers ship their property to Fore River for paid storage.  Cella Decl. ¶ 2.  As relevant to this case, the customers are paper mills that use STRC's rail service to ship large quantities of roll paper to and from Fore River in rail cars.  *Id.*  Arrangements for shipments to and from Fore River are made by and between the customers and STRC.  *Id.* ¶ 3.  Fore River is not involved in deciding quantities shipped or timing of shipments.  *Id.*  Fore River also has no involvement in or awareness of the terms by which the shipments will occur, *e.g.*, the rates, charges or fees charged by STRC to Fore River's customers or types of rail cars to be used.  *Id.* ¶ 4.

---

[5] The Interstate Commerce Commission ("ICC") is the predecessor agency to the STB.  In 1995, via the ICCTA, Congress abolished the 108-year-old ICC and created the STB in its stead.  *See Pejepscot*, 215 F.3d at 197.

[6] In setting forth the factual backdrop I have drawn from both the Complaint and an affidavit submitted by Fore River, giving each side's version of events to the extent they clash.  For purposes of resolving the instant motion, it is unnecessary either to ascertain the scope of factual disputes or to resolve any.

Fore River has no ownership interest in the goods that it stores for customers and has no authority or rights as to the goods other than storing them and preparing them for shipment pursuant to the customers' instructions. *Id*. ¶ 5. Fore River cannot sell or otherwise dispose of the goods without instructions from the customers. *Id*. Fore River's relationship with STRC is as follows: (i) Fore River unloads full rail cars shipped to it and places the contents inside the warehouse for storage, (ii) pursuant to customers' instructions, Fore River loads the goods into empty rail cars to be shipped elsewhere, and (iii) to the extent the goods are shipped to or from Fore River's facility by rail, Fore River is in regular contact with STRC. *Id*. ¶ 6.[7]

Fore River is not itself a party to any transportation contract with STRC concerning the rail cars at issue in this case. *Id*. ¶ 7. Fore River does not receive bills of lading or any other contractual documents, and until this litigation commenced had never seen any of the tariffs claimed by STRC to apply here despite having asked for copies at least once. *Id*. Fore River never agreed with STRC, in writing or otherwise, to any arrangement under which Fore River would be liable for demurrage charges or, for that matter, any other charges relating to the rail service that Fore River's customers use. *Id*. ¶ 8.

On February 1, 2004 STRC implemented Freight Tariff ST 6004 ("Tariff 6004"), which required all STRC-served customers and consignees to pay demurrage and governed the manner in which STRC assessed and computed demurrage charges. Complaint ¶ 11. Per Tariff 6004, Item Number 30, STRC is required to provide consignees with notification when a railcar is delivered or placed for loading or unloading. *Id*. ¶ 13. During April, May, June and October 2004 STRC provided Fore River with appropriate notification of the delivery and placement of certain railcars that had

---

[7] STRC describes Fore River as "a consignee and/or shipper engaged in the business of shipping, receiving, loading and unloading (*continued on next page*)

been consigned to Fore River for unloading.  *Id*. ¶ 14.  According to STRC, notwithstanding these notifications, Fore River incurred demurrage charges pursuant to Tariff 6004 during that time frame as a result of its failure to conduct the timely unloading of railcars that had been consigned to it and delivered and placed for unloading by STRC.  *Id*. ¶ 15.

Thereafter, STRC submitted demurrage calculation sheets to Fore River under a series of cover letters dated May 18, June 11, July 23 and November 12, 2004, each of which informed Fore River of its total demurrage charge for the preceding month and requested that Fore River review the demurrage calculation sheets and contact STRC immediately concerning any discrepancies.  *Id*. ¶ 16. Each cover letter further provided, "If we have not heard from you within ten (10) days from the date hereof, we will assume that you are in agreement with the enclosed calculations, and an actual bill for same will be issued."  Exh. B to *id*. at [2], [12], [20], [31].  STRC did not receive, during the ten days following submittal to Fore River of each of the foregoing demurrage-calculation sheets, any communication from Fore River identifying discrepancies with respect to those charges.  Complaint ¶ 17.  STRC thereafter submitted invoices to Fore River seeking an aggregate amount of $34,320 in demurrage charged incurred for those months.  *Id*. ¶ 18.

On September 1, 2005 STRC implemented Freight Tariff ST 6004-A ("Tariff 6004-A"), which superseded Tariff 6004.  *Id*. ¶ 19.  Pursuant to Tariff 6004-A, Item Number 30, STRC was required to provide consignees with notification when a railcar was delivered or placed for loading or unloading. *Id*. ¶ 20.  During the months of May, June, July and August 2006 STRC provided Fore River with appropriate notification of the delivery and placement of certain railcars that had been consigned to Fore River for unloading.  *Id*. ¶ 21.  According to STRC, notwithstanding these notifications, Fore

---

railcars, certain of which were delivered and placed by the STRC[.]"  Complaint ¶ 12.

River incurred demurrage charges pursuant to Tariff 6004-A during that time frame as a result of its failure to conduct the timely unloading of railcars that had been consigned to it and delivered and placed for unloading by STRC. *Id*. ¶ 22.

Thereafter, STRC submitted demurrage calculation sheets to Fore River under a series of cover letters dated June 8, July 14, August 4 and September 15, 2006, each of which informed Fore River of its total demurrage charge for the preceding month and requested that Fore River review the demurrage calculation sheets and contact STRC immediately concerning any discrepancies. *Id*. ¶ 23. Each cover letter further provided, "If we have not heard from you within ten (10) days from the date hereof, we will assume that you are in agreement with the enclosed calculations, and an actual bill for same will be issued." Exh. E to *id*. at [2], [16], [41], [54]. During the period from May 2006 through August 2006 Fore River informed STRC that it would not pay the demurrage charges it had incurred during the months of May, June, July and August 2006 and that those charges were invalid. Complaint ¶ 24. That refusal notwithstanding, STRC submitted invoices to Fore River seeking an aggregate amount of $114,960 in demurrage charges incurred for the months of May through August 2006. *Id*. ¶ 25.

Despite STRC's repeated attempts to collect the demurrage charges, Fore River has refused to remit payment. *Id*. ¶ 28. STRC asks the court to order Fore River to pay $149,280 in demurrage charges plus interest, costs, attorney fees and such further relief as the court may deem just and equitable. *See id*. at 7.

In its answer to STRC's complaint, Fore River interposes fifteen affirmative defenses, among them that (i) Fore River is not a party concerning whom STRC may impose, assess or collect demurrage charges, (ii) any amount Fore River is found to owe STRC should be set off against amounts STRC owes Fore River pursuant to 49 U.S.C. § 11704(b) for failing to provide service upon

8

reasonable request pursuant to 49 U.S.C. § 11101 – specifically by failing and/or refusing to provide reasonable switching services,[8] (iii) some or all of the demurrage rates and/or charges STRC seeks to recover are unreasonable pursuant to 49 U.S.C. § 10702,[9] (iv) the rules and/or practices pursuant to which STRC seeks to recover some or all of the demurrage charges are unreasonable pursuant to 49 U.S.C. § 10702, (v) STRC's attempt to collect some or all of the demurrage charges in the circumstances of this case is unreasonable pursuant to 49 U.S.C. § 10702, (vi) some or all of the demurrage charges in issue arise in whole or in part from delay that is attributable to STRC rather than to Fore River, (vii) some or all of the demurrage rates and/or charges that STRC seeks to recover do not fulfill the purposes and requirements of 49 U.S.C § 10746, and (viii) the rules and/or practices pursuant to which STRC seeks to recover some or all of the demurrage charges do not fulfill the purposes and requirements of 49 U.S.C. § 10746.  *See* Answer and Affirmative Defenses of Defendant Fore River Warehousing and Storage Co., Inc. to Plaintiff's Complaint ("Answer") (Docket No. 4) at 6-8.

According to Fore River, STRC repeatedly missed "switches," *i.e.*, failed to haul away empty rail cars from Fore River's facility and replace them with full cars for unloading – thus causing the delays that gave rise to the demurrage charges.  Cella Decl. ¶ 10.  These failures resulted in damages

---

[8] Section 11704(b) provides: "A rail carrier providing transportation subject to the jurisdiction of the [STB] under this part is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part.  A rail carrier providing transportation subject to the jurisdiction of the [STB] under this part is liable to a person for amounts charged that exceed the applicable rate for the transportation."  49 U.S.C. § 11704(b).  Section 11101 provides, in relevant part: "A rail carrier providing transportation or service subject to the jurisdiction of the [STB] under this part shall provide the transportation or service on reasonable request."  *Id.* § 11101(a).

[9] Per section 10702, "A rail carrier providing transportation or service subject to the jurisdiction of the [STB] under this part shall establish reasonable . . . (**1**) rates, to the extent required by section 10707, divisions of joint rates, and classifications for transportation and service it may provide under this part; and (**2**) rules and practices on matters related to that transportation or service."  49 U.S.C. § 10702.  Section 10707 provides, *inter alia*: "When the [STB] finds in any proceeding that a rail carrier proposing or defending a rate for transportation has market dominance over the transportation to which the rate applies, it may then determine that rate to be (*continued on next page*)

to Fore River, *i.e.*, lost business due to its inability to receive additional inbound rail cars containing goods for which Fore River could have charged storage fees. *Id.* In addition, according to Fore River, STRC repeatedly made large groups of rail cars available for unloading all at once, well beyond what it knew to be Fore River's capacity to unload the cars, and then sat back and watched the clock tick. *Id*. ¶ 11. Per Fore River, there is also reason to believe that STRC has included in its demurrage calculations rail cars as to which demurrage cannot be charged, including "storage-in-transit" cars. *Id*. ¶ 12. The concept of storage-in-transit is that a shipper pays the rail carrier a daily rate to hold goods in rail cars pending instructions from the shipper on when and where to deliver the cars. *Id*. Storage-in-transit is different than demurrage, under which the goods have been ordered delivered or picked up but the cars are detained at the delivery or pickup point for a time longer than agreed upon. *Id*.

### III.  Analysis

STRC acknowledges that it is an interstate rail carrier subject to the jurisdiction of the STB. *See* Complaint ¶ 2. Fore River seeks a stay of the instant action for purposes of referring to the STB questions whether:

1.      STRC can assess, impose or collect demurrage charges against Fore River in the absence of any agreement by Fore River to be liable for such charges.

2.      STRC's demurrage rates and/or charges are reasonable and/or serve the purposes set forth in 49 U.S.C. § 10746.

3.      The manner in which STRC calculates its demurrage charges is reasonable and/or serves the purposes set forth in 49 U.S.C. § 10746.

---

unreasonable if it exceeds a reasonable maximum for that transportation.  However, a finding of market dominance does not establish a
(*continued on next page*)

4.      The rules and/or practices pursuant to which STRC purports to impose demurrage charges are reasonable and/or serve the purposes set forth in 49 U.S.C. § 10746.

5.      STRC's imposition of demurrage charges is reasonable and/or serves the purposes set forth in 49 U.S.C. § 10746 in light of STRC's own delays and responsibility for the backup of rail cars.

6.      STRC is attempting to collect demurrage charges on rail cars that are not properly subject to such charges.

7.      If STRC may assess demurrage charges against Fore River, STRC's failure and/or refusal to provide reasonable switching services constitutes a violation of 49 U.S.C. § 11101, such that Fore River's damages arising from such violation may be set off against any amounts due from Fore River to STRC.

*See* Reply of Defendant Fore River Warehousing and Storage Co., Inc. to Plaintiff's Opposition to Defendant's Motion To Stay Case and Refer Questions to the Surface Transportation Board ("Reply") (Docket No. 10) at 2; *see also* Motion To Stay at 9-10.

These questions satisfy both the first and third of the three prongs of the First Circuit's primary-jurisdiction test.  As to the first prong, all seven questions implicate matters of railway national policy reflected in 49 U.S.C. §§ 10702, 10746, 11101 and 11704, which seek to strike a balance between public need and commercial fairness (both to the railway itself and to other cogs in the rail-network wheel, including warehouse companies such as Fore River).  As to the third prong, an agency determination as to the questions presented, which are peculiarly within the ken of the STB, would materially aid this court.  Finally, as to the second prong, any of Questions No. 2 through 7

---

presumption that the proposed rate exceeds a reasonable maximum." 49 U.S.C.A. § 10707(c).

potentially involve consideration of intricate, technical facts within the expertise of the STB, such as whether STRC repeatedly missed "switches"  and/or or made large groups of rail cars available for unloading all at once, thus causing the delays for which some or all of the demurrage charges have been assessed, and whether STRC wrongly included in its demurrage calculations rail cars as to which demurrage cannot be charged, including "storage-in-transit" cars.  *See Capitol Materials*, 2004 WL 771676, at *5-*8 (noting that "[w]hether a particular practice is unreasonable typically turns on the particular facts"; assessing reasonableness of railroad's bunching, switching practices in demurrage-charge case in part against backdrop of industry practice).  When, as here, "claims require not only legal analysis, but also an informed evaluation of the economics or technology of the regulated industry[,]" that fact counsels in favor of a primary-jurisdiction referral.  *DeBruce Grain, Inc. v. Union Pac. R.R. Co.*, 149 F.3d 787, 789 (8th Cir. 1998).

In addition, as Fore River suggests, there is precedent for referral to the STB of questions regarding the reasonableness of rates charged via tariff by a railroad subject to the STB's jurisdiction, including demurrage rates.  *See* Motion To Stay at 8-9; *see also, e.g., United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63 (1956) ("[I]n the circumstances here presented, the question of tariff construction, as well as that of the reasonableness of the tariff as applied, was within the exclusive primary jurisdiction of the [ICC]."); *South Tec*, 337 F.3d at 815-16 (noting that district court had referred to STB questions whether railroad's demurrage rate was unreasonable, whether method by which railroad calculated charges was unreasonable and whether practice by which railroad's demurrage charges accrued was discriminatory with respect to shippers); *Union Pac. R.R. Co. v. Ametek, Inc*., 104 F.3d 558, 560 (3d Cir. 1997) (noting that district court had stayed proceedings and referred to ICC issue of reasonableness of rail carrier's demurrage charges); *Chicago, Rock Island & Pac. R.R. Co. v. Furniture Forwarders of St. Louis, Inc.*, 420 F.2d 385, 388 (8th Cir. 1970)

("Whenever a rate, rule, or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the [ICC].") (citation and internal quotation marks omitted); *FMC Corp.*, 2000 WL 134010, at *3 ("Questions of tariff construction, or the reasonableness of rules, regulations, and practices, fall within the expertise of the STB. . . .  Although courts need not refer questions of whether a rule or practice is applicable or has been violated, the salient concern remains whether the case presents issues that require the agency's expert and specialized knowledge to resolve, or in which uniformity is desirable.") (citations omitted); *G & T Trucking Co. v. GFI Am., Inc.*, No. C8-97-157, 1997 WL 527236, at *2 (Minn. Ct. App. Aug. 26, 1997) ("Any question concerning construction of a tariff is a question of law ultimately reviewable by the courts.  However, where any rate, rule, or practice is attacked as unreasonable or unjustly discriminatory, or where the question is highly technical, then a question of fact exists which is properly heard by the ICC."); *compare, e.g., World Airways, Inc. v. Northeast Airlines, Inc.*, 349 F.2d 1007, 1011 (1st Cir. 1965) ("The rule is that the doctrine of primary jurisdiction is inapplicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule.") (footnote, citation and internal quotation marks omitted).

In the face of the compelling case made by Fore River for referral, STRC proffers the comparatively weak argument that this action raises no specialized issues of national transportation law, practice or policy inasmuch as (i) it is "a simple dispute over fees[,]" and (ii) all of the rules governing applicability and calculation of those fees are spelled out in Tariffs 6004 and 6004-A. *See* Plaintiff's Opposition to Defendant's Motion To Stay Case and Refer Questions to the Surface Transportation Board, etc. ("Opposition") (Docket No. 9) at 5.

While the instant action may be nothing more than "a simple dispute over fees" from STRC's point of view, Fore River sees it quite differently, raising what appear at this stage to be colorable

13

defenses that happen to implicate matters within the STB's field of expertise. Even if the demurrage fees in issue were assessed strictly in accordance with Tariffs 6004 and 6004-A, that is not necessarily the end of the matter; Fore River essentially contends, *inter alia*, that the tariffs themselves may have been structured or applied in such a way as to run afoul of national transportation policies and laws.

STRC alternatively asserts that "[e]ven if there were a question as to the reasonableness of the fees, Fore River gave up its rights to make those arguments when it did not timely respond to STRC's demurrage calculation sheets, as requested in STRC's correspondence." *Id*. This contention, as well, finds no solid footing. As an initial matter, STRC does not allege that Fore River failed to tender a timely response to the letters sent in 2006; to the contrary, STRC states that Fore River protested those charges. *See* Complaint ¶¶ 23-24. Thus, STRC makes no showing that Fore River waived any rights with respect to the 2006 charges. In any event, with respect to both the 2004 and the 2006 charges, STRC merely advised Fore River: "If we have not heard from you within ten (10) days from the date hereof, we will assume that you are in agreement with the enclosed calculations, and an actual bill for same will be issued." Exh. B to Complaint at [2], [12], [20], [31]; Exh. E to Complaint at [2], [16], [41], [54]. Even assuming *arguendo* that Fore River's failure to respond within ten days at STRC's unilateral request could be said to have effected a "waiver" of Fore River's rights, the subject matter was "agreement with the enclosed calculations" – not agreement that the charges were reasonable and/or otherwise properly assessed.

STRC finally asks the court to exercise its considerable discretion not to make the requested referral so as to avoid needless delay in adjudication of this case. *See* Opposition at 6-7. It is unclear exactly how much delay might be entailed in a referral; STRC attempts no quantification. In any event,

I am unpersuaded that any delay that might occur would be "needless" in view of the strong case made by Fore River for referral.[10]

## IV.  Conclusion

For the foreseeing reasons, I recommend that the court **GRANT** the Motion To Stay and **REFER** to the STB the seven specific questions delineated by Fore River.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

---

[10] STRC cites several cases in support of its argument that the court should refrain from exercising its discretion to refer this case to the STB, notably *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003), *World Airways*, 349 F.2d at 1011, *In re Genentech, Inc., Sec. Litig.*, No. C-88-4038-DLJ, 1989 WL 106834 (N.D. Cal. July 7, 1989), *clarified on other grounds*, 1989 WL 137189 (N.D. Cal. Sept. 15, 1989), and *Farmers Ins. Exch. v. Superior Court of Los Angeles County*, 2 Cal.4th 377, 391-92 (1992).  *See* Opposition at 5-6.  None of these cases helps STRC.  *Culliton*, *World Airways* and *Genentech* are distinguishable; *Farmers Insurance* is unhelpful to STRC inasmuch as the court found referral appropriate.  In *World Airways*, the court did "not have any question of the reasonableness of the rule defining 'charter trips' which is incorporated in the World certificate but instead [was presented with] the question of whether there ha[d] been a violation thereof."  *World Airways*, 349 F.2d at 1011 (footnote omitted).  Here, Fore River has raised questions implicating the reasonableness of the tariffs themselves.  Both *Culliton* and *Genentech* arose under statutory schemes separate from those implicating agency regulation.  In *Culliton,* which involved prosecution of a pilot for the crime of making false statements on a medical form submitted to the Federal Aviation Administration ("FAA"), *see Culliton*, 328 F.3d at 1076, the court held that the district court properly declined to refer to the FAA the question whether the pilot had made false statements on the form, observing: "[S]imply because the FAA has the competence to deal with false statements on its applications does not mean that Congress has conferred upon it sole responsibility to penalize false statements, thereby suspending the operation of a criminal statute of general application[,]" *id.* at 1082.  In *Genentech*, which involved allegations of violation of federal securities and related state laws, *see Genentech*, 1989 WL 106834, at *1, the court declined to refer to the Food and Drug Administration ("FDA") questions regarding the safety and efficacy of the drug Activase, observing: "[T]he issue before this Court is not whether the FDA improperly approved Activase, but rather whether defendants violated federal securities laws by making false and misleading statements about Activase and its impact on Genentech's business[,]" *id.*  This case, by contrast, arises under 49 U.S.C. § 10746, a part of the statutory scheme pursuant to which the STB regulates rail transportation.  In *Farmers Insurance*, the California Attorney General alleged that several insurers had engaged in unlawful and unfair business practices by violating certain provisions of the California Insurance Code.  *See Farmers Insurance*, 2 Cal.4th at 381-82, 384.  The Supreme Court of California concluded that the trial court had abused its discretion in declining to issue a stay to permit the Insurance Commissioner, pursuant to the doctrine of primary jurisdiction, to pass on questions concerning violation of the underlying Insurance Code provisions.  *See id.* at 381, 398.  The court observed, *inter alia*: "[I]t seems clear that the Insurance Commissioner, rather than a court, is best suited initially to determine whether his or her own regulations pertaining to compliance have been faithfully adhered to by an insurer."  *Id.* at 399 (footnote omitted).

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 15th day of August, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

16